IN THE UNITED STATE BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
RALEIGH DIVISION

IN RE:                                          )
                                                )
LEROY HAMLIN, and                               )          CASE NO. 09-05272-8-SWH
SHEILA HAMLIN,                                  )                Chapter 13
          Debtors.                              )

## BRIEF IN SUPPORT OF CONFIRMATION OF DEBTORS' PLAN PRIOR TO CONSIDERING OR GRANTING ORAL MOTION TO VOLUNTARILY DISMISS FIRST MADE AT CONFIRMATION HEARING

NOW COMES John F. Logan, the Standing Chapter 13 Trustee for the Eastern District of

North Carolina, Raleigh Division, and submits this brief in support of the Trustee's argument

made at hearing on February 17, 2010.

### FACTS

The facts are undisputed and were stated during hearing, in the pleadings related to the

matters called for hearing on February 17, or appear in the court's records of the case. Such

records include the recording of the debtors' § 341 meeting of creditors. The debtors filed their

Chapter 13 petition on June 25, 2009, and the Trustee held their § 341 meeting, as scheduled and

noticed, on August 7, 2009. The debtors' plan, as initially proposed, provided for payments of

$1,529.00 for 15 months, followed by payments of $1,447.00 for 40 months, for a total plan base

of $80,815.00, and a plan term of 55 months. The debtors scheduled an unsecured priority claim

of $3,103.00 owing to the IRS, $1,166.00 owing to the North Carolina Department of Revenue,

and a pre-petition arrearage claim owing to their mortgage lender of $6,331.00. The plan filed

with their petition, indicates their monthly post-petition mortgage payment was $929.00.

-1-

On August 3, 2009, the IRS filed an unsecured priority claim for $40,881.68, indicating the debtors had not filed Federal tax returns for 2006, 2007, or 2008, and thereby rendered the debtors' proposed plan infeasible. The debtors testified at their meeting that they needed to file State and Federal tax returns for 2005 through 2008, and the returns had been prepared and were ready to mail. The Trustee held the §341 meeting open until August 30, 2009, to allow the debtors time to file their returns. The Trustee advised the debtors at the meeting that their plan was infeasible, and asked whether they would agree to confirmation of a feasible plan of $1,529.00 for 15 months (the same first step as the debtors had proposed), followed by 40 months' payments of $2,386.00. Because the debtors first 15 months' payments would not change under the proposed feasible plan, debtors' counsel would have time to object to the IRS claim, if not timely and properly amended following the bar date (or after the previously unfiled returns had been processed), and, because the debtors did not want to hold up confirmation of their plan, they agreed to the Trustee seeking confirmation of the higher, feasible plan.

On August 25, 2009, after receiving and processing the debtors' delinquent tax returns, the IRS amended its claim to be an unsecured priority claim for $20,608.76. On November 5, 2009, the debtor's mortgage lender filed its arrearage claim for $12,571.22 (more than twice the amount scheduled), and amended its claim on November 13, 2009, though the arrearage owed and to be paid through the plan remained the same. This claim also stated that effective July 14, 2009, the debtors' mortgage payment would increase to $1,146.15.

Confirmation of the debtors' plan was delayed because the Trustee filed two motions to dismiss the debtors' case due to plan payment delinquencies; the second was resolved by Consent

-2-

Order entered December 21, 2009. The Consent Order provided that if the debtors did not pay the amounts specified in the Order by the required dates for six months' from December 1, 2009, their case would be dismissed. With the payment delinquency issue resolved, and with an agreed-upon plan which remained feasible, despite fluctuating increases and decreases in various claims, the Trustee filed and served his Minutes of 341 Meeting and Motion for Confirmation of Plan (the "Trustee's Motion" or "Motion for Confirmation") on December 23, 2009. It is important to note that under ¶ 5 of the Trustee's Motion, even if the debtors never amended their plan to change the amount of particular monthly payments or the plan term, the debtors' plan, and their obligation to make monthly payments to the Trustee, would end as soon as the Trustee had received an amount sufficient to pay all allowed administrative priority claims, secured claims, and all unsecured priority claims in full. Such paragraph also specifies that, "general unsecured creditors will receive $-0-," in this case. The debtors do not dispute that the Trustee's Motion for Confirmation meets all conditions precedent to confirmation under 11 U.S.C. § 1325(a).

On January 19, 2010, debtors' counsel timely filed and served an Opposition to Motion to Confirm Chapter 13 Plan (the "Objection"). The stated reason for the objection is that, "[t]he claim filed by the IRS has been amended to result in a significant reduction which would allow for reduced plan terms." The objection does not disclose the facts that the IRS claim had been amended four months' before the Trustee's Motion was filed, that the mortgage lender's arrearage claim to be paid through the plan had been filed after the date of the §341 meeting for an amount more than two times higher than scheduled, and that debtors' counsel could have requested a

requested a change in the plan terms by simply making a request of the Trustee at any time before the Trustee filed his Motion for Confirmation.

The Trustee and debtor's counsel appeared at the hearing on the Trustee's Motion and the debtor's Objection on February 17, 2010; the debtors did not appear. After the Trustee's Motion and the debtor's Objection had been called for hearing, debtor's counsel, for the first time, made an oral request that the debtors' case be voluntarily dismissed under §1307(b). The Trustee argued at hearing that the court should enter an order confirming the debtors' plan, prior to considering or allowing the debtors' voluntary dismissal of their case. The parties agree that if the debtors' plan is confirmed before dismissal, the Trustee will be required to disburse all funds on hand to creditors, and in payment of Trustee's commissions, pursuant to the Bankruptcy Code and the terms of the confirmed plan. If, however, the debtors are allowed to voluntarily dismiss their case prior to confirmation, the Trustee will be required to remit all funds on hand, minus a $125.00 administrative claim allowed to the Trustee pursuant to §503(b) and the court's standing Administrative Order Authorizing Administrative Claim by Trustees in Cases Dismissed Prior to Confirmation, entered January 20, 1999 (the "Administrative Order").

## LEGAL ISSUE

Must the court grant the debtors' oral motion for voluntary dismissal of their case pursuant to 11 U.S.C. § 1307(b), made for the first time at the scheduled hearing on the Trustee's Motion for Confirmation, filed pursuant to 11 U.S.C. § 1325(a) and local practice, or should the court instead grant the Trustee's Motion for Confirmation prior to dismissing the debtors' case?

-4-

## ARGUMENT

The facts of this case, applicable law, statutory construction of applicable law, and equitable principles upon which bankruptcy law is based dictate that the Trustee's Motion for Confirmation should be allowed prior to considering and ruling upon the debtors' oral motion to dismiss, made for the first time at the hearing on plan confirmation.

Debtor's counsel made his oral motion to dismiss immediately after the Trustee's Motion for Confirmation and the debtors' Objection had been called for hearing, as scheduled. 11 U.S.C. §1307(b) governs a debtor's right to voluntarily dismiss a chapter 13 case and provides:

> On request of the debtor at any time, if the case has not been converted ..., the court shall dismiss a case under this chapter. Any waiver of the right to dismiss under this chapter is unenforceable.

One line of case law recognizes a debtor's right to voluntarily dismiss a case at any time prior to conversion or dismissal as absolute. *See, e.g.,* Barbieri v. RAJ Acquisition Corp. (In re Barbieri), 199 F.3d 616, 619 (2d Cir.1999). The contrasting line of case law is highlighted by the Eighth Circuit's decision in In re Molitor, 76 F.3d 218, 220 (8th Cir.1996), restricting the right to voluntarily dismiss to prevent abuse of the bankruptcy system. While these cases address conversion vs. dismissal, extension to confirmation vs. dismissal under the facts of this case is fully appropriate. In acknowledging the split of authority, the Molitor court wrote:

> Neither viewpoint is without support. Several courts have adopted [the debtor's] position, holding that [a] Chapter 13 debtor's pre-conversion right to voluntary dismissal under § 1307(b) is absolute. *E.g.,* In re Looney, 90 B.R. 217 (Bankr.W.D.Va.1988). Other courts have held that § 1307(c) curtails a Chapter 13 debtor's right to voluntary dismissal. *E.g.,* In re Gaudet, 132 B.R. 670, 675-76

(D.R.I.1991). We are guided by our prior decision in In re Graven, 936 F.2d 378 (8th Cir.1991). In that case, this Court concluded that analogous provisions of Chapter 12, § 1208(b) and (d), did not afford the Chapter 12 debtor an unlimited right to voluntary dismissal. "We conclude that the broad purpose of the bankruptcy code, including Chapter 12, is best served by interpreting section 1208(d) to allow a court to convert a case to Chapter 7 upon a showing of fraud even though the debtor has moved for dismissal under subsection (b)." *Id.* at 385.

We believe that same broad purpose as well as the principles of statutory construction employed in Graven apply equally well to the nearly identical provisions of Chapter 13 and the instant case. As in Graven, we are mindful that *the purpose of the bankruptcy code is to afford the honest but unfortunate debtor a fresh start, not to shield those who abuse the bankruptcy process in order to avoid paying their debts.* [Emphasis added]. *Id.* As in Graven, we also look to the overall purpose and design of the statute as a whole rather than viewing one subsection in isolation. *Id.* In this case, [the debtor] failed to offer any defense whatsoever to the Appellees' allegations of bad faith. Instead, he chose to use § 1307(b) as an escape hatch once the Appellees called his bluff. To allow [the debtor] to respond to a motion to convert by voluntarily dismissing his case with impunity would render § 1307(c) a dead letter and open up the bankruptcy courts to a myriad of potential abuses. We decline to do so.

The Trustee is not aware of any controlling precedent on this issue in this district.

While debtors' counsel argues that the express language of §1307(b) is clear and mandates immediate dismissal of this case upon the debtors' request, made through him, at hearing, it is important when interpreting statutes that the court look not only to the express language, however, but also to the overall purpose of the act. As the Supreme Court has directed, the court should not "construe statutory phrases in isolation." United States v. Morton, 467 U.S. 822, 828, 104 S.Ct. 2769, 2773, 81 L.Ed.2d 680 (1984). The court should also consider "the design of the statute as a whole and ... its object and policy." Crandon v. United States, 494 U.S. 152, 110 S.Ct. 997, 1001, 108 L.Ed.2d 132 (1990). *See also,* Chapman v. Houston Welfare Rights Org., 441 U.S. 600, 608, 99 S.Ct. 1905, 1911, 60 L.Ed.2d 508 (1979) ("As in all cases of statutory construction, our task is

-6-

statutory construction, our task is to interpret the words of these statutes in light of the purposes Congress sought to serve"); Kifer v. Liberty Mut. Ins. Co., 777 F.2d 1325, 1332 (8th Cir.1985) ("[T]o ascertain such legislative intent, we may properly consider not only the language of the statute but also the subject matter, the object to be accomplished, the purpose to be served, the underlying policies, the remedy provided, and the consequences of various interpretations"). While the purpose of the bankruptcy code is to provide a "fresh start" for insolvent debtors [Grogan v. Garner, 498 U.S. 279, 111 S.Ct. 654, 659, 112 L.Ed.2d 755 (1991)], the opportunity for a "completely unencumbered new beginning," is not, and is not meant to be, available to all, but is limited to the "honest, but unfortunate debtor." Id., 111 S.Ct. at 659 [quoting Local Loan Co. v. Hunt, 292 U.S. 234, 244, 54 S.Ct. 695, 699, 78 L.Ed. 1230 (1934)]. The purpose of the bankruptcy code is to protect the honest debtor, not to provide a shield for those who exploit the code's protections, such as that afforded to the debtors in this case via the protection of the automatic stay for eight months, then allow them to escape either judicial authority or to avoid paying for the cost of that protection at the eleventh hour at the expense of those who have been held at bay, while the debtors meander through their case. As the Fourth Circuit put it in addressing statutory construction in Newton v. Employers Liability Assurance Corp., 107 F.2d 164, 167 (4th Cir. 1939), "the mischief and the remedy must be considered, and be given an interpretation, if possible, which will suppress the mischief and advance the remedy."

It is also important to note in this case that the language of 11 U.S.C. § 1325, the core of chapter 13, is clear, unequivocal, and also mandatory in subsection (a) which provides: "Except as provided in subsection (b) [not applicable in this case because neither the Trustee nor any

-7-

unsecured creditor has objected to confirmation], the court *shall* **confirm a plan if** – [the

enumerated requirements of subsections (1) through (9) and the hanging paragraph of §1325(a)

have been met]. *Emphasis added*. There is no question that all the conditions precedent to

confirmation have been met. The debtors' oral motion to dismiss was, in effect, the withdrawal of

their objection to confirmation. But, even were the court to conclude otherwise, the Objection was

not filed in good faith, and should be denied. The Objection is predicated upon the IRS's

amendment of its claim and the only thing the debtors' Objection attempts to achieve is to change

the payment terms, not prevent confirmation. To rule otherwise would ignore:

(1) the fact (documented by the § 341 meeting recording) that the debtors agreed to the plan

   set forth in the Trustee's Motion so that confirmation of their plan would not be delayed,

(2) the fact that the Trustee, the debtors, and debtors' counsel agreed at the § 341 meeting that

   should the agreed payment schedule later prove susceptible of amendment to reduce the

   debtors' higher monthly plan payment which was not to begin until month 16 of the plan[1],

   the debtors' would have plenty of time to amend their plan before the debtors suffered any

   detriment from being required to make a monthly payment higher than they had originally

   proposed, and

(3) the fact that the IRS amended its claim four months' prior to the hearing on confirmation,

   giving the debtors approximately four months (much more than ample time) prior to the

---

1   The first 15 months' payments of $1,529.00 per month provided for in the Trustee's Motion
are the same monthly payment amount proposed by the debtors in the plan they filed with their
petition on June 25, 2009. Month 16 of the debtor's plan, the month in which the debtors' plan
payment would increase under the Trustee's plan, to which the debtors agreed, will not begin until
October, 2010.

Trustee's preparation and filing of his Motion for Confirmation[2], as requested by the debtors, and

(4) the fact that, under the terms of the Trustee's Motion for Confirmation, unsecured creditors will receive no dividend (consistent with the plan filed by the debtors at the outset of their case), and as soon as the debtors pay to the Trustee an amount sufficient to pay all allowed administrative priority claims, secured claims, and unsecured priority claims in full, together with the Trustee's commissions, the debtors' payment obligations under the confirmed plan will end, regardless of the plan term otherwise stated in the Trustee's Motion.

Accordingly, there is no difference in the effect on the debtors for the first 15 months' of their case of the plan of which the Trustee seeks confirmation and the plan filed by the debtors with their petition. While the Trustee has not chosen to pursue any such claim, there are grounds for the Trustee to seek sanctions for the debtors' filing of their Objection as a violation of Bankruptcy Rule 9011 and against debtors' counsel under 28 U.S.C. § 1927.

While the Trustee agrees, as a general proposition, that a debtor may seek voluntary dismissal of a chapter 13 case under 11 U.S.C. § 1307(b), that right is not always absolute and is not immediate upon the making of the request, as debtors' counsel would have the court believe.

---

2 "In this district, after reviewing a debtor's petition, schedules, statements, proposed plan, and information provided at the § 341 meeting, the trustee will move for confirmation of a plan that he asserts is consistent with the requirements of Chapter 13. The motion may or may not incorporate all of the provisions from the debtor's proposed plan. The debtor is free to object to the trustee's motion as is any other party in interest." In re Alexander, 344 B.R. 742, 744 (Bankr. E.D. N.C. 2006). Debtors are permitted to modify plans simply by making a written

The procedural safeguard of Federal Rule of Bankruptcy Procedure 1017(d), and the debtors'

failure to meet the requirements of such Rule in first making their motion to dismiss orally at

hearing prevent the court from considering their motion at this time. As a result, the Trustee's

Motion for Confirmation must be granted, thereby resulting in the requirement that the Trustee

disburse funds on hand in this case pursuant to the confirmed plan. After confirmation, the

Trustee does not oppose dismissal but rather requests and insists upon it, as required by the

Consent Order entered December 21, 2009, due to the debtors' failure to abide by the

requirements of such Consent Order.

Federal Rule of Bankruptcy Procedure 1017(d) provides, in relevant part: "Conversion or

dismissal pursuant to ... [§] 1307(b) shall be on motion filed and served as required by Rule 9013."

Rule 9013 provides:

> A request for an order, except when an application is authorized by these rules,
> shall be by written motion, unless made during a hearing. The motion shall state
> with particularity the grounds therefor, and shall set forth the relief or order sought.
> Every written motion, other than one which may be considered ex parte, shall be
> served by the moving party on the trustee or debtor in possession and on those
> entities specified by these rules or, if service is not required or the entities to be
> served are not specified by these rules, the moving party shall serve the entities the
> court directs.

One reported court decision has analyzed the interaction of these Rules as they apply to

both § 1307(b) and an oral motion to voluntarily dismiss a case first made at hearing in response

to the prosecution of a motion to convert a debtor's case from Chapter 13 to Chapter 7, and, in

doing so, reached the proper conclusion. In that case, In re Bistrian, 184 B.R. 678 (E.D. PA

---

request of the trustee at any time before the trustee's preparation and filing of a motion for
confirmation.

1995), the United States District Court for the Eastern District of Pennsylvania affirmed the Bankruptcy Court's ruling that the oral motion to dismiss first made at the hearing was not properly before the court and could not be considered. Properly before the court were the chapter 13 trustee's motion to dismiss the debtor's case for exceeding the secured debt limit of § 109(e) and a motion to convert the debtor's case to a case under chapter 7, filed by two of the debtor's creditors. The court converted the debtor's case, and the debtor appealed.

The district court made clear that the question before it was, "not the right itself [to voluntarily dismiss a case under §1307(b)], but the means by which a debtor may exercise that right." *Id.,* 184 B.R. at 682. The debtor's argument was that although Rule 1017 requires the filing of a written motion, because Rule 9013 is incorporated into Rule 1017, and because Rule 9013 allows a party to make a motion orally at hearing, then an oral motion to dismiss under § 1307(b) may first be made at hearing without the filing of a written motion. The court recognized the paucity of case law analyzing Bankruptcy Rule 9013, so it turned to cases interpreting Federal Rule of Civil Procedure 7(b)(1), which mirrors Rule 9013. The court pointed out that the requirement of a written motion serves several important purposes which must be honored. First, the rule permits the court and the parties to determine what transpires regarding the motion – a record keeping function. *Id.,* 184 B.R. at 682. Secondly, the requirement of a written motion permits both the court and the opposing party to prepare adequately. "At a hearing... parties generally gather to argue over discrete elements of litigation. Many oral motions will have little or no connection to the reason for a particular hearing, and a court should refuse to consider them." *Id.,* 184 B.R. at 683. Citing, 5 Charles A. Wright and Arthur R. Miller, *Federal Practice and*

-11-

Arthur R. Miller, *Federal Practice and Procedure* § 1193, at 49 (2d ed. 1990), the court adopted the treatise's point that, "The provision in Rule 7(b) for oral motions does not mean that on a hearing of a written motion a party may interpose a different motion for unrelated relief orally and without notice, and thereby circumvent the writing and particularity requirements of Rule 7(b)(1)." *Id.,* 184 B.R. at 683. The district court pointed out that, "a contrary holding could create institutional chaos for the bankruptcy court. Written motions that 'state with particularity the grounds therefor' allow parties to decide whether to oppose them or not, and to file thorough, researched responses. Written motions also allow the court to engage in its own research and analysis in advance of the hearing. In contrast, unrelated oral motions, by definition, raise new issues that neither the court nor the parties could have foreseen, or for which they could have prepared." *Id.,* 184 B.R. at 683. The court made the point that this does not mean that an oral motion to voluntarily dismiss may never be considered, in fact, the hearing of such a motion would be appropriate when all interested parties are present and agree that the relief requested should be granted. In this case, however, the bankruptcy court's refusal to hear and consider the debtor's oral motion to dismiss in the face of a competing, properly filed and noticed, motion for conversion, which sought relief much different than dismissal prior to conversion, was entirely proper and appropriate.

The situation before the court in this case is no different than that in Bistrian, and this court, likewise, should refuse to consider the debtor's oral motion to dismiss first made at hearing, and should allow the Trustee's Motion for Confirmation which is properly before it.

-12-

## **CONCLUSION**

For the foregoing reasons, the Trustee respectfully submits that the court should refuse to consider, and should not grant, the debtors' oral motion to dismiss their chapter 13 case, but should grant the Trustee's Motion for Confirmation. This will ensure that the funds paid to the Trustee pursuant to the debtors' plan, and held by the Trustee in trust for the benefit of creditors under that plan, will be disbursed to creditors rather than returned to the debtors as a windfall and an eight month savings account, while creditors were held at bay and paid nothing other than a few adequate protection payments.

Respectfully submitted this the 19th day of February, 2010.

John F. Logan
Standing Chapter 13 Trustee
NCSB No. 12473
P.O. Box  61039
Raleigh, NC  27661-1039
Tel.  919-876-1355

-13-

**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF NORTH CAROLINA**
**RALEIGH DIVISION**

| | |
|---|---|
| **IN THE MATTER OF:** | **CASE NUMBER:** |
| **LEROY HAMLIN** | **09-05272-8-SWH** |
| **SHEILA HAMLIN** | **CHAPTER 13** |
| Debtor(s) | |

## CERTIFICATE OF SERVICE

I, John F. Logan, of PO Box 61039, Raleigh, NC 27661-1039, do certify:

That I am and at all times hereinafter mentioned was, more than eighteen (18) years of age; and

That I have this day served a copy of the **BRIEF IN SUPPORT OF CONFIRMATION OF DEBTOR'S PLAN** upon all interested parties in this action by depositing a copy of same in a postage paid envelope with the United States Postal Service **or, if such interested party is a filing user by serving such interested party by electronic transmission, pursuant to Local Rule 5005-4(9)(b)** addressed to:

John T. Orcutt, Esq.
6616-203 Six Forks Rd.
Raleigh, NC 27615

Jason Watson, Esq.
6616-203 Six Forks Rd.
Raleigh, NC 27615

Leroy Hamlin
Sheilia Hamlin
1606 Cranston Rd.
Garner, NC 27529

I certify under penalty of perjury that the foregoing is true and correct.

EXECUTED ON: February 19, 2010.

    /s/ John F. Logan
    John F. Logan
    Chapter 13 Trustee